No. 99-550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 164N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

PATRICK ANDERSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew J. Wald, Attorney at Law, Miles City, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Gerald Navratil, Dawson County Attorney; Vince Vanderhagen,

Deputy County Attorney, Glendive, Montana

Submitted on Briefs: February 24, 2000

Decided: June 20, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Patrick Anderson appeals from the Judgment and Order Suspending Sentence issued by the Seventh Judicial District Court, Dawson County. We reverse.

¶3 Anderson raises the following issue on appeal:

¶4 Whether the District Court exceeded its sentencing authority?

BACKGROUND

¶5 On January 20, 1998, the State filed an Information charging Patrick Anderson with felony Partner Assault, third offense, in violation of § 45-5-206, MCA. The State alleged that on or about January 4, 1998, Anderson struck Kandi Anderson in the face, causing her to fall and injure her head and right elbow. On June 9, 1998, the State filed an Information charging Anderson with felony Family Member Assault, fourth offense, in violation of § 45-5-206, MCA. The State alleged that on or about May 30, 1998, Anderson spanked his three-year-old son with his hand leaving multiple black and blue bruises. On June 11, 1998, the State filed a Motion for Joinder requesting that the District Court join these separate charges for trial. The District Court granted the State's Motion for Joinder on October 12, 1998.

¶6 On November 12, 1998, Anderson entered a plea of guilty to the charge of Family Member Assault and entered an *Alford* plea to the charge of Partner Assault. On March 17, 1999, the District Court ordered Anderson to pay a fine of $20,000 for each offense, with all but $1000 suspended on each offense, and sentenced Anderson to five years imprisonment at the Montana State Prison on each charge, to run consecutively, with all ten years suspended upon Anderson's compliance with the terms of his probation. One of the conditions of Anderson's suspended sentence provided:

The Defendant's visits with his son shall be supervised by a person approved by his Probation Officer, until such time as his Probation Officer feels supervision is no longer needed.

¶7 On April 15, 1999, Anderson filed a Motion to Correct Sentence, requesting the District Court strike the condition governing his visits with his son. The District Court denied Anderson's motion. Anderson appeals.

## STANDARD OF REVIEW\

¶8 This Court reviews a criminal sentence to determine whether the sentence is within the parameters provided by statute. *See State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.

## DISCUSSION

¶9 Whether the District Court exceeded its sentencing authority?

¶10 Anderson contends that the District Court exceeded its sentencing authority by delegating the discretionary authority to determine who shall supervise Anderson's visits with his son and for how long such supervision shall be necessary to his probation officer. The State asserts that the sentencing court has the discretion to place restrictions on visitations between a defendant and a victim. However, the State takes no position on the question of whether a court can delegate the authority to determine who will supervise such visitations and for how long supervision shall be necessary to a probation officer. The State does argue that, in the event we rule in favor of Anderson, this case should be remanded to the sentencing court so that the court may modify its judgment to maintain restrictions on Anderson's contact with his son.

¶11 A district court's authority to sentence a criminal defendant is defined and constrained

by statute. We have repeatedly held that a district court has no power to sentence in the absence of specific authority. *See State v. Wilson* (1996), 279 Mont. 34, 37, 926 P.2d 712, 714. The District Court's authority to impose restrictions during the period of Anderson's suspended sentence is governed by §§ 46-18-201 and -202, MCA (1997). Pursuant to these statutes, the District Court had the authority to impose reasonable conditions necessary for rehabilitation and for the protection of the victim and society. *See* §§ 46-18-201(1)(a)(xii) and -202(1)(e), MCA (1997). The District Court also had the authority to restrict Anderson's freedom of association. *See* § 46-18-202(1)(c), MCA (1997).

¶12 A district court's authority to impose restrictions necessary for the rehabilitation of the defendant or the protection of society is not without limit. We have previously stated that in order to be "reasonably related to the objectives of rehabilitation and protection of the victim and society . . . a sentencing limitation or condition must have . . . some correlation or connection to the underlying offense for which the defendant is being sentenced." *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11. In *Ommundson*, we reversed a condition of a district court sentence which required a defendant convicted of driving under the influence of alcohol to participate in a sex offender treatment program because there was no nexus between that condition and the defendant's offense. *Ommundson*, ¶ 12.

¶13 We have also stated that a district court's authority to impose restrictions necessary for the rehabilitation of the defendant or the protection of society does not include "delegation of the actual and direct power and discretion to incarcerate for extended periods of time from the court to a probation officer." *State v. Hatfield* (1993), 256 Mont. 340, 347, 846 P.2d 1025, 1029. In *Hatfield*, we reversed a district court sentence which granted a probation officer the discretion to require the defendant to serve up to 180 days in jail in the event the defendant was found to be not in compliance with the terms and conditions of his suspended sentence. *Hatfield*, 256 Mont. at 346, 846 P.2d at 1029.

¶14 Neither of these two previously recognized limitations to a sentencing court's authority to impose restrictions necessary for rehabilitation or protection, is precisely implicated by Anderson's sentence. The restrictions on Anderson's contact with his son, the victim of his assault, at least superficially have "some correlation or connection to the underlying offense" for which Anderson was sentenced. In general, probation restrictions on visitations between a defendant convicted of family member assault and the victim are "reasonably related" to the objective of protecting the victim and society from further similar conduct. *See Ommundson*, ¶ 11; *see also* § 46-18-202(1)(e), MCA (1997).

¶15 The method of imposing these restrictions-i.e., granting Anderson's probation officer the discretion to determine who will supervise Anderson's visits with his son and when supervision will no longer be necessary-is not strictly the "delegation of the actual and direct power and discretion *to incarcerate*" which we found unlawful in *Hatfield.* 256 Mont. at 347, 846 P.2d at 1029 (emphasis added).

¶16 The precise problem with the District Court's delegation of authority in this instance falls somewhere in between *Ommundson* and *Hatfield*; the court has delegated authority to Anderson's probation officer with no guidance on how that authority is to be exercised. The court simply granted the probation officer the authority to choose a person to supervise visitations and to require supervision "until such time as his Probation Officer *feels supervision is no longer necessary*." (Emphasis added.) There is no way to determine whether Anderson's probation officer will exercise this unfettered discretion in such a manner that Anderson's visitation condition will be reasonably related to either Anderson's rehabilitation or the protection of the victim. For instance, the District Court's sentence does not prevent the probation officer from simply determining that Anderson's visits do not require supervision at all, because this determination is left to the probation officer's feelings. Nor does the District Court's sentence prevent the probation officer from appointing inappropriate supervision for Anderson's visits with his son. Accordingly, we conclude that this provision of the District Court's sentence and judgment is unlawful in that we are unable to determine whether it is reasonably related to the rehabilitation of the defendant or the protection of the victim and society. On remand, the District Court might set some standards upon which the probation officer can choose who will supervise the Defendant and for how long such supervision will be required.

¶17 Anderson requests that this provision be stricken from the District Court's sentence and judgment. The State urges us to remand this case to the District Court in order to allow the court to lawfully restrict unsupervised contact between Anderson and his son if the court so chooses.

¶18 We reverse and remand for resentencing.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART